## UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| CANADIAN SOLAR INC., CANADIAN SOLAR INTERNATIONAL, LTD.,  CANADIAN SOLAR MANUFACTURING (LUOYANG) INC., CANADIAN SOLAR MANUFACTURING (CHANGSHU) INC., CANADIAN SOLAR (USA) INC., CSI CELLS CO., LTD., CSI SOLAR POWER (CHINA) INC., CSI SOLARTRONICS (CHANGSHU) CO., LTD., CSI SOLAR TECHNOLOGIES INC., CSI SOLAR MANUFACTURE INC., CSI NEW ENERGY HOLDING CO., LTD, CSI-GCL SOLAR MANUFACTURING (YANCHENG) CO., LTD., CHANGSHU TEGU NEW MATERIALS TECHNOLOGY CO., LTD., CHANGSHU TLIAN CO., LTD., AND SUZHOU SANYSOLAR MATERIALS TECHNOLOGY CO., LTD.,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES,<br><br>Defendant. | Ct. No. 18-00184 |

## COMPLAINT

Plaintiffs Canadian Solar Inc., Canadian Solar International, Ltd., Canadian Solar Manufacturing (Luoyang) Inc., Canadian Solar Manufacturing (Changshu) Inc., CSI Cells Co., Ltd., CSI Solar Power (China) Inc., CSI Solartronics (Changshu) Co., Ltd., CSI Solar Technologies Inc., CSI Solar Manufacture Inc., CSI New Energy Holding Co., Ltd., CSI-GCL Solar Manufacturing (Yancheng) Co., Ltd., Changshu Tegu New Materials Technology Co., Ltd., Changshu Tlian Co., Ltd. and Suzhou Sanysolar Materials Technology Co., Ltd., producers and exporters of the subject merchandise and Canadian Solar (USA) Inc., an importer of the subject merchandise (collectively, "Canadian Solar"), by and through their counsel, allege as follows:

## I.    PROCEEDING UNDER REVIEW

1.    This action seeks judicial review of certain aspects of the final results of the fourth administrative review of the countervailing duty order on crystalline silicon photovoltaic cells, whether or not assembled into modules from the People's Republic of China conducted by the U.S. Department of Commerce ("Commerce").  See Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China: Final Results of Countervailing Duty Administrative Review; 2015, 83 Fed. Reg. 34,828 (Dep't Commerce July 23, 2018) ("Final Results"), and accompanying Issues and Decision Mem. ("Final IDM").  The review in question covers entries of crystalline silicon photovoltaic cells, whether or not assembled into modules, during the period January 1, 2015 through December 31, 2015.

## II.    JURISDICTION AND STANDARD OF REVIEW

2.    Plaintiffs bring this action pursuant to the Tariff Act of 1930, as amended (the "Act"), sections 516A(a)(2)(A)(i)(I) and 516A(a)(2)(B)(iii), 19 U.S.C. § 1516a(a)(2)(A)(i)(I); (a)(2)(B)(iii).

3.    This Court has jurisdiction pursuant to 28 U.S.C. § 1581(c) and section 516A(a)(2)(A)(i)(I), (B)(iii) of the Act, 19 U.S.C. § 1516a(a)(2)(A)(i)(I), (B)(iii).

4.    The standard of review, as set forth in section 516A(b)(1)(B)(i) of the Act, 19 U.S.C. § 1516a(b)(1)(B)(i), is whether the determinations, findings or conclusions of Commerce were "unsupported by substantial evidence on the record, or otherwise not in accordance with law."

## III.    STANDING

5.    Plaintiffs are foreign producers and exporters of the subject merchandise who were selected, collectively, as a mandatory respondent during the countervailing duty administrative

review and an importer of the subject merchandise.  Plaintiffs are, therefore, "interested parties" within the meaning of sections 771(9)(A) and 516A(f)(3) of the Act, 19 U.S.C. § 1677(9)(A) and 1516a(f)(3).

6.    Accordingly, Plaintiffs have standing to commence this action pursuant to 28 U.S.C. § 2631(c).

## IV.    TIMELINESS OF THIS ACTION

7.    On July 23, 2018, Commerce published the Final Results in the Federal Register.

8.    Plaintiffs filed a summons to initiate this case on August 22, 2018, within 30 days of the publication in the Federal Register of the Final Results.  This complaint is being filed within 30 days after the date on which the summons was filed.

9.    Thus, Plaintiffs' summons and complaint are timely filed pursuant to 19 U.S.C. §§ 1516a(a)(2)(A)(i) and (B)(iii) and USCIT R. 3(a)(2), 6(a).

## V.    STATEMENT OF FACTS

10.    Commerce initiated the countervailing duty investigation of crystalline silicon photovoltaic cells, whether or not assembled into modules from the People's Republic of China on November 16, 2011, following the filing of the petition on October 19, 2011.  See Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China: Initiation of Countervailing Duty Investigation, 76 Fed. Reg. 70,966 (Dep't Commerce Nov. 16, 2011).  The International Trade Commission ("Commission") simultaneously conducted its investigation.  See Crystalline Silicon Photovoltaic Cells and Modules From China; Institution of Antidumping and Countervailing Duty Investigations and Scheduling of Preliminary Phase Investigations, 76 Fed. Reg. 66,748 (Int'l Trade Comm'n Oct. 27, 2011).

11.     On December 7, 2012, Commerce issued a countervailing duty order on crystalline silicon photovoltaic cells, whether or not assembled into modules, from the People's Republic of China following an affirmative countervailing duty determination and an affirmative injury determination by the Commission.  See Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China: Countervailing Duty Order, 77 Fed. Reg. 73,017 (Dep't Commerce Dec. 7, 2012).

12.     Between December 2016 and January 2017, certain interested parties requested that Commerce conduct an administrative review of the countervailing duty order on crystalline silicon photovoltaic cells, whether or not assembled into modules, from the People's Republic of China. On February 13, 2017, Commerce initiated the fourth administrative review covering the period January 1, 2015 through December 31, 2015.  See Initiation of Antidumping and Countervailing Duty Administrative Reviews, 82 Fed. Reg. 10,457 (Dep't Commerce Feb. 13, 2017).

13.     On July 6, 2017, Commerce selected two mandatory respondents: (1) Canadian Solar Inc. and (2) Changzhou Trina Solar Energy Co., Ltd.  See Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China: Preliminary Results of Countervailing Duty Administrative Review, and Rescission of Review, in Part; 2015, 83 Fed. Reg. 1235 (Dep't Commerce Jan. 10, 2018) ("Preliminary Results"), and accompanying Issues and Decision Mem. at 2 ("Prelim IDM").

14.     On July 28, 2017, Plaintiffs filed their initial questionnaire response and thereafter participated fully in the review, timely submitting supplemental information as requested by Commerce.  Prelim IDM at 3 n.10, n. 16.

4

15.     On November 1, 2017, Canadian Solar timely submitted benchmark data. Id. at 3. On November 15, 2017, Canadian Solar submitted information to rebut or clarify benchmark information submitted by SolarWorld Americas Inc. ("Petitioner"). Id.

16.     On March 5, 2018, Plaintiffs submitted a case brief for Commerce's consideration prior to issuing the Final Results. Final IDM at 2. In addition to making various arguments for Commerce's consideration, including contesting Commerce's treatment of the Export Buyer's Credit Program, certain aspects of Commerce's value-added-tax ("VAT") methodology and elements of Commerce's less-than-adequate-remuneration ("LTAR") benefit calculations, Plaintiffs incorporated all arguments made by other respondents to the extent that they did not conflict directly with arguments by Plaintiffs. On March 12, 2018, Plaintiffs submitted a rebuttal brief in response to certain arguments made by Petitioner and incorporated the rebuttal arguments made by other respondents to the extent that they did not conflict directly with arguments made by Plaintiffs. Id. at 2-3.

17.     On July 23, 2018, Commerce published the Final Results. Commerce calculated a countervailing duty subsidy rate of 14.34 percent for Plaintiffs. Final Results, 83 Fed. Reg. at 34,829.

18.     In the Final Results, Commerce used adverse facts available ("AFA") to impute a benefit under the Export Buyer's Credit Program to Plaintiffs despite record evidence that Plaintiffs' customers, and Plaintiffs by extension, did not receive support through this mechanism. Final IDM at Cmt. 2.

19.     In the Final Results, Commerce made certain determinations regarding the nature and calculation of the benefit received by Plaintiffs through LTAR programs on aluminum extrusions, solar glass and polysilicon. Commerce found that the provision of aluminum

extrusions for LTAR program was "*de facto* specific within the meaning of section 771(5A)(D)(iii)(I) of the Act" on the sole basis that the recipient industries ranging from construction to consumer durables were "limited in number." Final IDM at Cmt. 3.

20. To construct the benchmark measuring the benefit received from the aluminum extrusions for LTAR program, Commerce averaged COMTRADE data at the six-digit Harmonized Tariff Schedule level (known as a "basket" category) with input-specific IHS data in a departure from its methodology in past reviews. Id. Further, in contrast to past reviews, Commerce did not calculate a total monthly average unit price for its Comtrade data. Canadian Solar filed a ministerial error allegation addressing this point and Commerce has not responded as of the time of the filing of this complaint.

21. To construct the benchmark to measure the benefit received from the polysilicon for LTAR program, Commerce declined to utilize actual transaction data from Plaintiffs' arms-length, market economy purchases to arrive at a "tier one" benchmark, opting instead to calculate the benchmark using "tier two" sources. Final IDM at Cmt. 5.

22. In the Final Results, Commerce added international delivery charges to benchmarks for LTAR inputs. Id. at Cmt. 8. In the Preliminary Results, Commerce calculated a benchmark for international freight by averaging data from two sources, Maersk and Xeneta. Id. In the Final Results, Commerce relied solely on Maersk data reasoning that that terminal handing charges are inconsistently included in the Xeneta data. Id.

23. In the Final Results, Commerce included VAT charges in its calculation of LTAR input programs in order to construct a notational delivered price. Id. at Cmt. 7.

24. In the Final Results, Commerce relied on AFA to calculate a benchmark for electricity for LTAR that sampled the highest provincial rates in China, rather than averaging all

provincial rates.  Id. at Cmt. 4.  As part of this calculation, Commerce included benefits calculated after April 20, 2015 following the Government of China's ("GOC") new provincial pricing policy. Id.  Finally, Commerce continued to calculate a "sharp" electricity benchmark for two of Canadian Solar's affiliates, Canadian Solar Manufacturing (Luoyang) Inc. ("LYSP") and CSI-GCL Solar Manufacturing (Yancheng) Co., Ltd. ("CSSM"), based on a mistranslation of two Chinese characters as "peak" instead of "sharp" in the underlying record.  Id.  Canadian Solar filed a ministerial error allegation addressing this point and Commerce has not responded as of the time of the filing of this complaint.

25.     In the Final Results, Commerce imputed a benefit to Plaintiffs under the Golden Sun Demonstration Program, which Commerce found to provide subsidies to entities involved in power generation and not the production of solar cells.  Id. at Cmt. 9.

26.     In the Final Results, Commerce "zeroed" negative benefits received by Canadian Solar by not offsetting Canadian Solar's purchases made at prices above LTAR benchmark prices in its calculation of Canadian Solar's benefits from the aluminum, solar glass, polysilicon and electricity programs as well as benefits from the Preferential Policy Lending to the Renewable Energy Industry Program.  Id. at Cmt. 10.

27.     In the Final Results, Commerce declined to calculate an entered value adjustment for Canadian Solar.  Id. at Cmt. 12.

## VI. STATEMENT OF THE CLAIMS

### COUNT I

28.     Plaintiffs herein incorporate by reference paragraphs 1 through 27, supra, of this complaint.

29.    Commerce's decision to impute a benefit to Plaintiffs under the Export Buyer's Credit Program, based on the application of AFA to the Government of China, is not based on substantial evidence and is otherwise not in accordance with law.

## COUNT II

30.    Plaintiffs herein incorporate by reference paragraphs 1 through 29, supra, of this complaint.

31.    Commerce's determination that the aluminum extrusions for LTAR program is specific based on the enumeration of six vague industry segments that include the catch-all category "other industries" is not based on substantial evidence and is otherwise not in accordance with law.

## COUNT III

32.    Plaintiffs herein incorporate by reference paragraphs 1 through 31, supra, of this complaint.

33.    Commerce's calculation of the benchmark for the aluminum for LTAR program using the average of IHS and COMTRADE, despite evidence that the spectrum of goods captured in the COMTRADE data is overbroad, is not based on substantial evidence and is otherwise not in accordance with law.

## COUNT IV

34.    Plaintiffs herein incorporate by reference paragraphs 1 through 33, supra, of this complaint.

35.    Commerce's methodology for averaging the COMTRADE data to calculate a benchmark for the aluminum LTAR program, and subsequent failure to address Canadian Solar's

ministerial error allegation, deviates from its prior practice and is not based on substantial evidence and is otherwise not in accordance with law.

## COUNT V

36.    Plaintiffs herein incorporate by reference paragraphs 1 through 35, supra, of this complaint.

37.    Commerce's reliance on a "tier two" benchmark to calculate the benefit received by Plaintiffs under the polysilicon for LTAR program, when data on the record supports the calculation of a preferred "tier one" benchmark, is not based on substantial evidence and is otherwise not in accordance with law.

## COUNT VI

38.    Plaintiffs herein incorporate by reference paragraphs 1 through 37, supra, of this complaint.

39.    Commerce's inclusion of international freight charges in the LTAR benchmark calculations is not reflective of prevailing market conditions and, therefore, is not based on substantial evidence and is otherwise not in accordance with law.

## COUNT VII

40.    Plaintiffs herein incorporate by reference paragraphs 1 through 39, supra, of this complaint.

41.    Commerce's reliance on Maersk data, and refusal to use Xeneta data, in its calculation of international freight charges is not based on substantial evidence and is otherwise not in accordance with law because Maersk data are based on uncertain price quotes and Xeneta data are accurate and include the required terminal handling charges.

## COUNT VIII

42.     Plaintiffs herein incorporate by reference paragraphs 1 through 41, supra, of this complaint.

43.     Commerce's inclusion of VAT in calculating the benchmark for LTAR input programs to arrive at a notional delivered price is not based on substantial evidence and is otherwise not in accordance with law.

## COUNT IX

44.     Plaintiffs herein incorporate by reference paragraphs 1 through 43, supra, of this complaint.

45.     Commerce's decision to selectively sample the highest provincial electricity rates in its calculation of the electricity benchmark in order to arrive at an AFA rate, without making any of the statutorily required specificity findings, is not based on substantial evidence and is otherwise not in accordance with law.

## COUNT X

46.     Plaintiffs herein incorporate by reference paragraphs 1 through 45, supra, of this complaint.

47.     Commerce's inclusion of electricity subsidy benefits calculated after April 20, 2015, despite record evidence that the GOC lacked control over provincial pricing policy following this date, is not based on substantial evidence and is otherwise not in accordance with law.

## COUNT XI

48.     Plaintiffs herein incorporate by reference paragraphs 1 through 47, supra, of this complaint.

49.    Commerce's use of the wrong benchmark price for the "sharp" electricity rate in LYSP's and YCSM's electricity benchmark calculation, when data on record established that the mistake was a mere translation error, and subsequent failure to address Canadian Solar's ministerial error allegation, is not based on substantial evidence and is otherwise not in accordance with law.

## COUNT XII

50.    Plaintiffs herein incorporate by reference paragraphs 1 through 49, supra, of this complaint.

51.    Commerce's imputation of a benefit under the Golden Sun Demonstration Program to Plaintiffs is not based on substantial evidence and is otherwise not in accordance with law because subsidies under this program are made available only to power producers, not producers of solar cells, the subject merchandise.

## COUNT XIII

52.    Plaintiffs herein incorporate by reference paragraphs 1 through 51, supra, of this complaint.

53.    Commerce's use of zeroing in its benchmark calculations for aluminum, solar glass, polysilicon, preferential policy loans and electricity is not based on substantial evidence and is otherwise not in accordance with law.

## COUNT XIV

54.    Plaintiffs herein incorporate by reference paragraphs 1 through 53, supra, of this complaint.

55.    Commerce's failure to make an entered value adjustment to the denominator in its calculation of Plaintiffs' countervailing duty subsidy rate, despite record evidence establishing that

Plaintiffs' sales of subject merchandise met all of Commerce's criteria for making such an adjustment, is not based on substantial evidence and is otherwise not in accordance with law.

## DEMAND FOR JUDGMENT AND PRAYER FOR RELIEF

WHEREFORE, and as challenged herein, Plaintiffs respectfully pray that this Court:

(1) find that Commerce's actions as described in Counts I-XIV were unsupported by substantial evidence and otherwise not in accordance with law;

(2)  order Commerce to recalculate the countervailing duty subsidy rate assigned to Plaintiffs in the administrative review by correcting the errors set forth in Counts I-XIV;

(4) order Commerce to publish amended final results in the Federal Register in accordance with a final decision by this Court in this matter;

(5) order Commerce to issue liquidation instructions to U.S. Customs and Border Protection consistent with this Court's decision; and

(6) provide such other relief as this honorable Court deems proper.

Respectfully submitted,

/s/ Jeffrey S. Grimson
Jeffrey S. Grimson
Kristin H. Mowry
Jill A. Cramer
Sarah M. Wyss
Yuzhe PengLing
James C. Beaty
Bryan P. Cenko
Mowry & Grimson, PLLC
5335 Wisconsin Avenue NW, Suite 810
Washington, DC 20015
202-688-3610 (phone)
trade@mowrygrimson.com
*Counsel to Plaintiffs*

Date: September 19, 2018